AUSA: Karen Reynolds          Telephone: (313) 226-9672
Special Agent: Christine A. Taylor    Telephone: (248) 219-6706

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

ℬ

United States of America
v.
JOSEPH GREGORY DUMOUCHELLE

| |
|---|
| Case: 2:19-mj-30586 |
| Judge: Unassigned, |
| Filed: 11-08-2019 |
| SEALED MATTER (MAW) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ February 2019 _____ in the county of _____ Wayne _____ in the
____ Eastern ____ District of ____ Michigan ____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

Christine A. Taylor, Special Agent, FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: __November 8, 2019__

City and state: __Detroit, MI__

_____
Judge's signature

Elizabeth A. Stafford
Printed name and title

## AFFIDAVIT

1.      I, Christine Ann Taylor, being duly sworn make the following statements in support of this warrant:

## **INTRODUCTION:**

2.      I am Special Agent with the Federal Bureau of Investigation (FBI) and have been so since June 1997. I am currently assigned to the Detroit Division, Oakland County Resident Agency, which is located in Troy, Michigan.  My duties include investigating White Collar Crimes to include violations of 18 USC 1343 and 1344.

3.      I am a "federal law enforcement officer" within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure.

4.      This Affidavit is in support of an application for a warrant to arrest Joseph Gregory DuMouchelle.

5.      The statements in this Affidavit are based in part on information provided by other law enforcement officers, my investigation of this matter and my experience and training as a Special Agent of the FBI.  I have not included every fact known to me regarding this investigation.  I have set forth the facts that I believe are necessary to establish probable cause that Joseph Gregory DuMouchelle perpetrated Wire Fraud in violation of 18 U.S.C. 1343.

1

## DETAILS OF THE INVESTIGATION

6.     DuMouchelle is the owner of Joseph DuMouchelle Fine & Estate Jewelry Buyers, Sellers, Appraisers and Auctioneers, LLC with offices in Florida, New York and Birmingham, Michigan (located in the Eastern District of Michigan).

7.     In May 2019, Thomas Theodore Ritter, a resident of North Dakota, contacted the FBI to advise of the following:

8.     DuMouchelle has been in the gem business for a number of years. DuMouchelle's wife, Melinda Adducci, is related to Ritter's brother-in-law. Ritter and DuMouchelle met approximately five or six years ago at a family wedding. After that, Ritter would see DuMouchelle annually. Ritter and DuMouchelle began doing business together shortly after they met. Ritter gave DuMouchelle money to purchase jewelry and they would split the profits once the jewelry was sold. Prior to January 2019, DuMouchelle owed Ritter approximately $430,000 from prior jewelry transactions.

9.     In January 2019, Ritter contacted DuMouchelle in order to collect the $430,000 DuMouchelle owed him. DuMouchelle presented an opportunity to purchase a Yellow Rose Diamond from a family trust in Texas. DuMouchelle represented to Ritter that the owner of the Yellow Rose Diamond was recently

deceased. DuMouchelle told Ritter that William Noble represented the deceased family regarding the sale of the diamond.

10.   DuMouchelle told Ritter the Yellow Rose Diamond could be purchased for $12,000,000 and sold for $16,000,000. In approximately February 2019, Ritter decided to participate in the transaction involving the Yellow Rose Diamond. The agreement was that Ritter would receive 75% of the profit from the sale and DuMouchelle would receive 25%. Ritter made it clear to DuMouchelle that he wanted to wire transfer the funds directly to the seller of the diamond and not to DuMouchelle.

11.   DuMouchelle told Ritter that Adducci, would contact Ritter to discuss the opportunity further.

12.   Ritter advised a short time later, Adducci contacted Ritter. She conducted an appraisal of the diamond and emailed it to Ritter.

13.   The description of the Yellow Rose Diamond was as follows: " A natural fancy vivid yellow emerald cut diamond ring in platinum and 18 karat yellow gold. The center diamond weighs 77.12 carats, VS2 clarity. The diamond measures 24.52 x 23.60 x 15.87 millimeters and has been certified by the Gemological Institute of America with Report Number 5131020246. The mounting contains 5.27 carats of round brilliant cut yellow and white tapered and diamond

baguettes. The diamond is accompanied by a GIA Monograph book and given the name "The Yellow Rose". "

14. On February 4, 2019 at 12:58 pm, DuMouchelle sent Ritter an email from his email account joe@josephdumouchelle.com which contained wire instructions. I reviewed the Internet Protocol (IP) information specific to where the email from DuMouchelle to Ritter originated. I utilized public search engines to attempt to identify the geolocation of the originating email. My investigation revealed the email was sent from a location within the Eastern District of Michigan, specifically, the metropolitan Detroit area. Within the email from DuMouchelle was what appeared to be an email forwarded from Richard Drucker of Gemworld International, Inc. email address rdrucker@gemguide.com. The email provided wire instructions to FineMark Bank and Trust, account number ending in 6231 in the name of Fine & Estate Appraisers, LLC. Investigation has revealed this account belonged to DuMouchelle and his wife Melinda Adducci. Based upon these representations and instructions, Ritter initiated the wire transfer which was subsequently declined by FineMark Bank. DuMouchelle told Ritter the wire transfer was denied by FineMark Bank because the dollar amount was too high.

15. On February 6, 2019, DuMouchelle sent Ritter an email from his email account joe@josephdumouchelle.com. Within the email from DuMouchelle

was what appeared to be an email purportedly from Drucker dated February 4, 2019 at 12:58 pm (same date and time as above), with new wire instructions for Bank of America account number ending in 0585. Investigation has revealed this account belonged to DuMouchelle Fine & Estate Jewelers LLC. I reviewed the Internet Protocol (IP) information specific to where the email from DuMouchelle to Ritter originated. I utilized public search engines to attempt to identify the geolocation of the originating email. My investigation revealed the email was sent from a location within the Eastern District of Michigan, specifically, the Metropolitan Detroit area.

16.    On February 9, 2019 at 8:51 pm, DuMouchelle sent Ritter and email from his email account joe@josephdumouchelle.com. I reviewed the Internet Protocol (IP) information specific to where the email from DuMouchelle to Ritter originated. I utilized public search engines to attempt to identify the geolocation of the originating email. My investigation revealed the email was sent from a location within the Eastern District of Michigan, specifically, the metropolitan Detroit area. The email stated the following: "Attached please find the receipt for the purchase of the 77.12ct Yellow Rose Diamond.  This receipt is for the diamond and the ring mounting the diamond is set in. It also includes the book produced by the GIA for the Yellow Rose". I reviewed the receipt attached to the email and it reflected the above described "Yellow Rose Diamond" was sold on

February 6, 2019 for $12,000,000 which was paid in full on February 6, 2019 via wire transfer.

17.    On October 1, 2019, I interviewed Drucker. He advised his company is an independent consulting firm.  His company is not in the business of purchasing or selling jewelry. Drucker has known DuMouchelle both personally and professionally for 25 to 30 years. He recalled an occasion when DuMouchelle contacted him and asked him to put together a report on a Yellow Rose Diamond.  This was not something that Drucker would typically do, but because of their long standing relationship, Drucker agreed to prepare the report as a favor to DuMouchelle.  Drucker did not have any involvement in a transaction involving the diamond nor did he know who the purchaser and seller were. Sometime after he prepared the report for DuMouchelle, Drucker was contacted by Ritter who inquired about Drucker's involvement in the sale of the Yellow Rose Diamond.  Specifically, Ritter told Drucker that Drucker was represented to Ritter in email communications from DuMouchelle as a representative of the seller.

18.    William Noble of Dallas, Texas, was interviewed pursuant to this investigation.  He said he was introduced to Joseph DuMouchelle by an associate in 2018.

19.    Noble advised in 2018, DuMouchelle took a 13.04 carat Emerald Cut Diamond Ring – F color, VS2 clarity, GIA – from Noble for $950,000.00

6

consignment. The agreement was explicit that if DuMouchelle sold the piece, he would pay Noble the $950,000.00 and split any profits made with no terms. After some time, Noble asked for the piece to be returned, and got no response from DuMouchelle. Noble asked again for the piece to be returned, and DuMouchelle told him that the piece sold with a 5% ($50,000.00) profit, and that DuMouchelle gave his client 30/60/90 terms to pay. DuMouchelle sent Noble a check for $100,000.00. The second check sent from DuMouchelle, for $450,000.00 was returned for non-sufficient funds.

20.    On July 31, 2018, while Noble was vacationing in Colorado, Noble was informed DuMouchelle appeared at his store unannounced and wanted to take goods to a 3-day show in New York for private individuals. Noble allowed DuMouchelle to pick out some goods to take to the show. At that time, Noble did not know DuMouchelle took 29 items. DuMouchelle subsequently listed the items through his online auction at a fraction of the cost of what Noble consigned them for.   When Noble confronted DuMouchelle, he said it was all a mistake and he would correct it. Noble demanded return of the items.  Over the next two months, DuMouchelle returned 27 out of 29 items to Noble. Since DuMouchelle returned the majority of his items, Noble felt comfortable continuing to do business with DuMouchelle. Noble sent more items for DuMouchelle to sell.  When Noble requested the return of items, DuMouchelle would either refuse or send Noble

phony tracking numbers and shipping numbers to mislead Noble into thinking the items were in transit. By the end of 2018, DuMouchelle had approximately $12.5 million of Noble's items.

21.     In February 2019, Noble was contacted by Anthony Dimmagio, a jeweler in Detroit, Michigan. Dimmagio told Noble he was contacted by DuMouchelle who stated that he was having an estate sale and the merchandise was selling for $.20 on the dollar. All of the merchandise belonged to Noble. Noble confronted DuMouchelle about this new information, and DuMouchelle denied all the claims. DuMouchelle then advised Noble he had a purchaser lined up to purchase the Yellow Rose Diamond. DuMouchelle further advised the purchaser would not allow him to take a profit so he offered a price of $12,000,000 to the purchaser. He asked if Noble would take $10,000,000 for the sale and wire transfer $2,000,000 back to DuMouchelle. Noble felt this was improper and possibly illegal so, he declined the sale.

22.     In or around February 2019, Noble received 6 pieces of his merchandise back from DuMouchelle, and shortly after, he received a wire of $4.2 million which Dumouchelle represented was for three pieces that DuMouchelle sold on Noble's behalf. Investigation revealed there was a transfer from DuMouchelle's Bank of America account number ending in 0585 on February 7, 2019 to Noble's account ending in 9238 for $4.250 million.

23. Further investigation has revealed that the above referenced wire transfer in the amount of $4.250 million on February 7, 2019 was proceeds of the $12,000,000 wire transfer from Ritter to DuMouchelle on February 6, 2019 for the purported purchase of the Yellow Rose Diamond.

24. Since February, Noble made numerous attempts to contact DuMouchelle via phone, messaging, and email to either have his items returned or to be paid for the items. Noble sent an employee to Detroit, Michigan for two weeks to try to contact DuMouchelle and bring the goods back, but he was unsuccessful. Later in the spring 2019, another employee traveled to Miami, Florida with the Yellow Rose Diamond previously mentioned to meet DuMouchelle and his client. The employee waited for several days, but DuMouchelle did not show because his "client had a broken knee". The employee returned to Texas with the Yellow Rose Diamond.

25. On April 12, 2019, DuMouchelle sent Ritter an email from his email account joe@josephdumouchelle.com. The email contained a copy of the contract for the purchase and sale of the above referenced Yellow Rose Diamond. The contract revealed that the diamond was sold to Jennifer H. Rands Trust, 35980 Woodward Avenue, Bloomfield Hills, Michigan for $16,500,000. DuMouchelle told Ritter that the purchaser sent three wires transfers to DuMouchelle in the amounts of $2,000,000, $4,000,000 and $10,500,000. Upon review of the Bank of

9

America account ending in 0585, I did not observe any deposits for the above listed amounts nor did I observe any wire transfers associated with the purchaser. On April 19, 2019, DuMouchelle sent Ritter, via email account joe@josephdumouchelle.com, an accepted copy of the contract. Both parties signed the written contract. During his interview, Noble advised he never sent the Yellow Rose Diamond to DuMouchelle nor did he agree to sell it to DuMouchelle.

26.     On or about April 21, 2019, Ritter traveled to Detroit to see the Yellow Rose Diamond for himself. DuMouchelle told Ritter the diamond was being held at the Brink's facility in Detroit, Michigan. DuMouchelle picked Ritter up from the airport and claimed the person in charge of the Brink's facility was on vacation so, they could not see the diamond. Instead, they visited DuMouchelle's office located at 251 East Merrill Street, Suite 236, Birmingham, Michigan. While at DuMouchelle's place of business in Birmingham, Michigan, DuMouchelle showed Ritter the book that accompanies the Yellow Rose Diamond. Ritter did not see the Yellow Rose Diamond.

27.     When Noble was interviewed, he advised he had approximately twelve books created for the Yellow Rose Diamond. The intent of creating the books was to provide the books to prospective purchasers of the Yellow Rose Diamond. DuMouchelle was provided a book which he never returned.

28.   Jonathon Birnbach of New York was interviewed pursuant to this investigation. Birnbach advised he conducts business as JB International LLC and Jonathon Birnbach. He has been buying and selling jewelry with DUMOUCHELLE for approximately twelve years. In September or October 2018, DUMOUCHELLE told Birnbach he was bidding on jewelry from estates. He suggested that he and Birnbach could purchase the jewelry and sell it for a profit at auction, after which they would split the profits evenly. In November 2018, Birnbach entered into a consignment agreement with DUMOUCHELLE. DUMOUCHELLE told Birnbach 95% of the consigned items sold at auction yet, Birnbach never received the proceeds of the sale. DUMOUCHELLE promised to pay Birnbach in January 2019. Birnbach said he sent approximately twelve wire transfers to DUMOUCHELLE for purchase of items at auction. Each wire transferred was associated with a consignment agreement. To date, Birnbach has only received $500,000 from DUMOUCHELLE and he is owed approximately $2.5 to $3 million.

29.    Based on the above information, I believe probable cause exists that

Joseph Gregory DuMouchelle devised or intended to devise a scheme or artifice to

defraud and obtained money and property by means of false and fraudulent

pretenses, representations, or promises transmitted or caused to be transmitted by

means of wire communication in violation of 18 U.S.C. 1343.


Further Affiant Sayeth Not.


Christine A. Taylor, Special Agent
Federal Bureau of Investigation


Subscribed and sworn before me on this _8th_ day of November, 2019.


Elizabeth A. Stafford
United States Magistrate Judge